Francisco PACHECO–CAMACHO,
Petitioner–Appellant,

v.

Robert HOOD, Warden, Federal Correctional Institution, Sheridan Oregon, Respondent–Appellee.

No. 01–35040.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 14, 2001

Filed Nov. 30, 2001

Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, Oregon, argued the cause for the petitioner-appellant.

Tim W. Simmons, Assistant United States Attorney, Portland, Oregon, argued the cause for the respondent-appellee.

Before: ALARCON, KOZINSKI and HAWKINS, Circuit Judges.

KOZINSKI, Circuit Judge:

Francisco Pacheco–Camacho was an exemplary prisoner. Serving his sentence of a year and a day, he earned the maximum number of good time credits permissible under federal law. Pacheco says that number is fifty-four days, but Bureau of Prisons (BOP) regulations allow him only forty-seven. This appeal is about the disputed seven days.[1]

## I

A federal prisoner may receive "up to fifty-four days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," subject to the BOP's determination that "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). Under this scheme, at the end of each year, the BOP determines whether the prisoner has been naughty or nice. If the latter, it may award him credit for an extra fifty-four days towards the remainder of his sentence.

The counting gets a bit tricky during the last year—or portion of a year—of the prisoner's sentence, because he obviously can't wait until the year's end to receive his credit. Recognizing this, the law provides that "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." *Id.* The BOP has promulgated an implementing regulation, which adopts the amount of time actually served by a prisoner as the basis for the proration. 28 C.F.R. § 523.20. The regulation consequently prorates the fifty-four days of credit a year earned by the model prisoner to 0.148 day

1. We have already ruled on Pacheco's emergency motion for consideration on the merits in our order of February 23, 2001, affirming the judgment of the district court. We now explain our reasons for doing so.

of credit for every actual day served during good behavior (54/365 = 0.148). At this rate, a prisoner who behaves himself may complete a sentence of a year and a day after serving 319 days in prison. At that point, the prisoner will have earned forty-seven days of good time credits (319 × 0.148 = 47.212), which, when added to time served, would make up the full 366 days of his sentence (319 + 47 = 366).[2]

Pacheco argues that this formula conflicts with the governing statute. In his view, when the statute awards fifty-four days "at the end of each year of the prisoner's term of imprisonment," this award should be based on the sentence imposed, without regard to the time actually served. According to Pacheco, "term of imprisonment" has a particular meaning. Because "[t]he term 'imprisonment' consistently is used to refer to a penalty or sentence," *United States v. Morales–Alejo*, 193 F.3d 1102, 1105 (9th Cir.1999), Pacheco urges us to find that "term of imprisonment," as used in 18 U.S.C. § 3624(b), must refer to the period of time imposed by the judgment, rather than to the time actually served. Accordingly, where a prisoner is sentenced to a term of imprisonment of a year and a day, he would be entitled to earn up to fifty-four days of good time credits even if he never actually serves the entire year. By Pacheco's calculation, we must start at the end of the sentence—the 366th day—and subtract fifty-four days, allowing Pacheco to be released after only 312 days.

## II

 We review Pacheco's claim that the BOP regulations have improperly deprived him of his duly-earned good time

credits with the deference that must be accorded to an agency's interpretation of the statute it administers. Because the BOP regulation in question, 28 C.F.R. § 523.20, was adopted through the notice-and-comment procedure, it is entitled to the full deference mandated by *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See McLean v. Crabtree*, 173 F.3d 1176, 1183 (9th Cir.1999), *cert. denied*, 528 U.S. 1086, 120 S.Ct. 814, 145 L.Ed.2d 685 (2000). In accordance with *Chevron*, we first examine the statute itself to determine whether "Congress has directly spoken to the precise question at issue," in such a way that "the intent of Congress is clear." *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. If our answer is negative—as it would be when "the statute is silent or ambiguous"—we proceed to the second step, where we decide whether the agency's interpretation "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

In this case, the words of the statute do not provide clear guidance as to what the phrase "term of imprisonment" means. At the very least, the plain language of section 3624(b) certainly does not compel Pacheco's conclusion that the "term of imprisonment" must refer to a sentence imposed in the judgment, as opposed to the time actually served. If anything, this reading is inconsistent with the statute, which provides that "credit for the last year ... of the term of imprisonment shall be *prorated* ...." 18 U.S.C. § 3624(b)(1) (emphasis added). Instead of a prorated portion, Pacheco wants the entire fifty-four days of credit—even though he never served the full 365 days. Whereas the

---

**2.** The calculation method is spelled out in detail in the BOP Program Statement, which explains how the proration works in various situations. BOP Program Statement 5880.28 at 1–45 (1992). Because these internal guide-

lines merely provide examples of how the proration mechanism of 28 C.F.R. § 523.20 is applied, and do not purport to alter the BOP regulations themselves, our review does not address them.

model prisoner will ordinarily receive his fifty-four-day credit *after* complying with prison disciplinary rules for 365 days, under Pacheco's reading, a prisoner who serves 311 days would receive the same number of credits for exhibiting good behavior over only eighty-five percent of the year. Pacheco's interpretation would therefore confer upon the prisoner a bonus during his last year of imprisonment. Nothing in the statute clearly suggests that Congress intended to give the prisoner such a windfall in his last year.

Contrary to Pacheco's contention, *United States v. Morales–Alejo*, 193 F.3d 1102 (9th Cir.1999), doesn't aid his argument. In that case, we considered whether a prisoner locked up for pretrial detention was "imprisoned in connection with a conviction" for the purpose of tolling his period of supervised release under 18 U.S.C. § 3624(e). *Morales–Alejo*, 193 F.3d at 1104. We held that "imprisonment" meant only the period of incarceration that the prisoner serves as a "penalty or sentence" for his crime, and not the pre-trial detention period, the purpose of which is to protect the public and to ensure the prisoner's appearance at trial. *Id.* at 1105. In our case, the prisoner's "term of imprisonment" would refer to the time he spends in prison pursuant to his "penalty or sentence." Because Pacheco has been earning good time credits towards his term of imprisonment, and there is no claim that Pacheco had been imprisoned on some basis other than the one for which his sentence of a year and a day had been imposed, *Morales–Alejo* is inapposite.

### III

As the language of section 3624(b) does not make clear whether the sentence imposed or the time served should be used as the basis of proration, we consider whether legislative history removes the ambiguity. *See Am. Rivers v. Fed. Energy Reg. Comm'n*, 201 F.3d 1186, 1196 & n. 16 (9th

Cir.1999) ("acknowledg[ing] the debate over the propriety, under *Chevron*, of venturing beyond plain meaning analysis and resorting to traditional implements of statutory construction to ascertain a clear congressional directive," but concluding that our practice has been to consider the legislative history alongside the plain statutory language when the latter alone "evinces no specific congressional directive").

In support of his interpretation, Pacheco relies on the fact that the statutory predecessor to section 3624 computed good time credits after every month served, and that by enacting the new statute, Congress sought to simplify this computation. *See Continuing Appropriations, 1985—Comprehensive Crime Control Act of 1984*, Sen. Rep. No. 98–225 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3329–30. In Pacheco's view, the BOP's formula is a return to the more complicated scheme of calculating credits on the basis of time actually served, and is therefore contrary to congressional intent.

We find this argument unpersuasive. Under the earlier scheme, the good time credits were calculated at different monthly rates, depending on the length of the prison term, and prison officials had discretion to withhold and restore credits depending on the inmate's subsequent behavior. That system did not allow a prisoner to estimate with certainty the time of his release. The new system, embodied in 18 U.S.C. § 3624(b), envisioned that prisoners would be able to do so.

While Congress intended the new system to be simpler than that under the previous law, it did not eliminate the proration of good time credits during the last year of the sentence. If Congress's sole goal had been simplicity, it could have chosen not to award *any* good time credits during the last year of imprisonment (as it does for sentences of a year or less), or to

award the full fifty-four days regardless of whether or not the prisoner serves the full year in prison. Instead, Congress chose to tolerate the additional complexity in order to arrive at a more equitable result. Far from mandating Pacheco's interpretation, congressional desire to strike a balance between simplicity and fairness, as evidenced by legislative history, lends additional support to the BOP's regulation.

## IV

Finding the meaning of "term of imprisonment," as used in section 3624(b), to be ambiguous, we proceed to the second step of the *Chevron* analysis, examining whether the BOP regulation is "based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. We first look at whether there is either an express or implicit congressional "delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843–44, 104 S.Ct. 2778. While the statute does not explicitly vest the BOP with the authority to determine the basis for the proration of good time credits, this power is implied by the BOP's statutory authority to award good time credits to inmates serving federal sentences. 18 U.S.C. § 3624(b). Moreover, the statute requires that the "credit for the last year or portion of a year ... shall be prorated," *id.* § 3624(b)(1), and this language indicates that the BOP has been implicitly charged with the implementation of the proration scheme.

As we have held in the context of the doctrine of credit for time at liberty, "[i]t is the administrative responsibility of the Attorney General, the Department of Justice, and the Bureau of Prisons to compute sentences and apply credit where it is due." *United States v. Martinez,* 837 F.2d 861, 865–66 (9th Cir.1988) (quoting *United States v. Clayton,* 588 F.2d 1288, 1292 (9th Cir.1979)). Other circuits have subsequently applied this observation in the con-

text of section 3624. Thus, the Seventh Circuit has stated that "[t]he federal good time statute, 18 U.S.C. § 3624, makes it clear that it is the Bureau of Prisons, not the court, that determines whether a federal prisoner should receive good time credit." *United States v. Evans,* 1 F.3d 654, 654 (7th Cir.1993) (citing *Gonzalez v. United States,* 959 F.2d 211, 212 (11th Cir.1992)). Similarly, the Eleventh Circuit has held that "[t]he Bureau of Prisons is ... responsible for computing th[e] sentence and applying appropriate good time credit." *Gonzalez,* 959 F.2d at 212 (citing *Martinez,* 837 F.2d at 865–66). The BOP regulation that adopts the term served rather than the sentence imposed as the basis for the proration therefore falls within the implied statutory authority of the BOP. As such, this regulation is entitled to our deference, so long as its interpretation is "reasonable." *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778.

■ In determining whether a regulation is reasonable, we "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [we] would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. 2778 (citations omitted). Instead, "we simply ask 'whether we are compell[ed] to reject' the agency's construction." *McLean,* 173 F.3d at 1181 (quoting *Leisnoi, Inc. v. Stratman,* 154 F.3d 1062, 1069 (9th Cir. 1998)).

As the discussion in Parts II and III of our opinion shows, the BOP's interpretation clearly meets this standard. This interpretation comports with the statutory language of section 3624(b), and does not subvert the statutory design. It establishes an effective and fair prorating scheme, enabling inmates to calculate with reasonable certainty the end of their im-

prisonment, while preventing certain prisoners from receiving disproportionate good time credits merely because their sentence happens to equal a year and a day.

■ We are not persuaded by Pacheco's contention that the language of the preceding subsection of the statute, section 3624(a), supports his interpretation of section 3624(b). Section 3624(a) states that a prisoner "shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." 18 U.S.C. § 3624(a). Pacheco asserts that "term of imprisonment," as used in that subsection, can only be interpreted as referring to the length of a sentence, rather than to the term served. Because statutory terms should be interpreted, whenever possible, with an eye to intra-statutory consistency, *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990), Pacheco urges us to apply the same interpretation of "term of imprisonment" to section 3624(b).

Given that our holding hinges on the deference due to the BOP, rather than on a fresh interpretation of the statute in question, we need not decide the meaning of "term of imprisonment" in section 3624(a) and its impact upon the subsection before us. We note, however, that Pacheco's argument is undermined by *United States v. Johnson,* 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000), where the Supreme Court interpreted another provision of the same statute, section 3624(e), which governs the supervised post-imprisonment release. In *Johnson,* the Court reviewed the decision of the Sixth Circuit, which relied on section 3624(a) to read section 3624(e) as mandating that an inmate whose imprisonment should have ended earlier than the date on which he was actually released is entitled to have the extra time spent in confinement count-

ed towards his supervised release. *Johnson v. United States,* 154 F.3d 569, 571–72 (6th Cir.1998). The Supreme Court reversed, finding that the language of section 3624(a) does not alter the natural reading of section 3624(e) as requiring that the count of the supervised release commence only upon the inmate's actual release from prison, rather than upon the termination of his sentence. *Johnson,* 529 U.S. at 58–59, 120 S.Ct. 1114. Similarly, we are not persuaded that Pacheco's reading of section 3624(a)—even were we to adopt it—would require the conclusion he urges with respect to section 3624(b). Thus, even when viewed in the light most favorable to Pacheco, the meaning of the statutory language of section 3624(b) is at best ambiguous, and therefore we must defer to the reasonable interpretation adopted by the BOP.

## V

■ While arguing that his interpretation of the statute is clear from the text and supported by legislative history, Pacheco also suggests, in the alternative, that his interpretation is plausible and should be preferred to that of the BOP because of the rule of lenity. The rule of lenity ensures that the penal laws will be sufficiently clear, so that individuals do not accidentally run afoul of them and courts do not impose prohibitions greater than the legislature intended. *See United States v. Bass,* 404 U.S. 336, 347–48, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The rule "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The rule of lenity, however, does not prevent an agency from resolving statutory ambiguity through a valid regulation. *See Babbitt v. Sweet Home Chapter of Cmtys.,* 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d

597 (1995). In such a case, the regulation gives the public sufficient warning to ensure that nobody mistakes the ambit of the law or its penalties. To the extent that there is any ambiguity in section 3624(b), the BOP has resolved it through a reasonable interpretation, and the rule of lenity does not apply. *See Lopez v. Davis,* 531 U.S. 230, 242, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (recognizing that *Chevron* deference applies to the BOP's interpretation of the statutes that it administers).

**AFFIRMED.**