United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2005

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 05-20347

ELLEN JEANETTE MORELAND

      Petitioner - Appellee

v.

THE FEDERAL BUREAU OF PRISONS; HARLEY G. LAPPIN, DIRECTOR, BUREAU OF PRISONS; JOYCE FRANCIS, WARDEN, FEDERAL PRISON CAMP – BRYAN

      Respondents - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, STEWART and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this habeas corpus proceeding, we must determine whether a federal statute governing credit for good conduct unambiguously directs how that credit is to be calculated and applied.[1] Because we conclude the statute is unambiguous, we do not address whether the rule of lenity applies or whether the Federal Bureau of Prisons' interpretation of the statute must be accorded deference under *Chevron, U.S.A. v. Natural Resources Defense*

---

[1]*See* 18 U.S.C. § 3624.

1

*Council, Inc.*[2] and its progeny. The Bureau of Prisons correctly determined the good-conduct credits in this case. Therefore, we reverse the district court's grant of habeas relief and deny the petition for writ of habeas corpus.

**I**

Ellen Jeanette Moreland was convicted in a federal district court in Wisconsin of conspiring to possess with intent to distribute cocaine, a violation of 21 U.S.C. § 846. She was sentenced to 210 months (17.5 years) imprisonment and five years of supervised release. Moreland had served 157 days in pretrial detention before she was transferred to the Federal Bureau of Prisons' custody on January 25, 1991, and absent any good-conduct credit, Moreland's sentence would have been completed on February 18, 2008.

The Bureau determined that during each year of her imprisonment, Moreland "displayed exemplary compliance with institutional disciplinary regulations"[3] and thus far had earned the maximum amount of good-conduct credit permitted under 18 U.S.C. § 3624(b). At issue is the maximum credit she may receive. Section 3624(b)(1) provides:

> [A] prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the

[2] 467 U.S. 837, 842-44 (1984).

[3] 18 U.S.C. § 3624(b)(1).

prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.[4]

The Bureau calculated Moreland's credit by deducting 54 days from her sentence at the end of each year she served. By the time Moreland had served fifteen years, less than one year of her sentence remained. The Bureau then prorated Moreland's good-conduct credit for the remainder of her sentence and projected her release date as November 17, 2005, based on 823 days of good-conduct credit, assuming continued exemplary behavior.

Moreland filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, contending that the Bureau had improperly calculated her good-conduct credits. Moreland asserted that she is entitled to 54 days of good-conduct credit for each year or partial year of her 17.5-year sentence, a total of 945 days of credit (54 days x 17.5 years = 945 days). She argued that at the end of her first year in prison, 54 days should have been deducted from the 365 days she served, so that her first year of imprisonment would have ended on day 311. The second year of her sentence would have ended on day 622, the third year on day 933, and so on, such that her release date would have been July 18, 2005.

The district court agreed with Moreland and directed the Bureau to "calculate her Good Conduct Time under 18 U.S.C. § 3624(b)(1) so that, for each year of the sentence imposed, she serves 311 days of actual time and earns 54 days of credit that vests

---

[4]18 U.S.C. § 3624(b)(1).

immediately." The Bureau complied. It subsequently transferred Moreland from the Federal Prison Camp – Bryan, Texas where she had been confined, to the Chicago Community Confinement Center for the remainder of her sentence, in order to comply with 18 U.S.C. § 3624(c), which requires the Bureau to "assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."[5] On July 18, 2005, Moreland commenced serving her five-year term of supervised release. The Bureau asserts that if the grant of habeas relief is reversed, Moreland will be returned to community confinement to serve the duration of her term of imprisonment.

## II

As a preliminary matter, Moreland contends that the Bureau and the director of the Bureau were not her immediate custodians when she sought habeas relief, and although she named them as parties, they must be dismissed from the case. That would leave the warden of the Bryan facility as the only proper party, Moreland asserts, and since that warden no longer has custody over her because she was transferred to Illinois, Moreland argues that this case must be dismissed. We disagree.

Moreland filed her petition for writ of habeas corpus in the district in which she was confined as required by 28 U.S.C. § 2241(d) and named as a respondent the warden of the

---

[5] 18 U.S.C. § 3624(c).

facility in which she was confined.[6] The "'in custody' determination is made at the time the habeas petition is filed."[7] The district court had jurisdiction to act on Moreland's petition when it rendered judgment, and we have jurisdiction over the appeal from that judgment. The issue before us is whether habeas relief should have been granted. If it was improperly granted, the Bureau may re-imprison Moreland, regardless of whether it should have been named as a party in this proceeding.

Moreover, whether the Bureau and the director of the Bureau should have been joined as parties raises questions of personal jurisdiction, not subject-matter jurisdiction.[8] Moreland named these governmental entities as respondents in the district court and did not challenge the propriety of her own actions until this appeal. Neither the Bureau nor the director question the court's jurisdiction over them, and the district court's final judgment explicitly directs the Bureau to calculate Moreland's good-conduct credit in a particular manner. The Bureau appeals from that judgment, and Moreland has waived any contention that she should not have joined, or obtained a judgment against, the Bureau.

---

[6]*See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement.").

[7]*Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) ("The Supreme Court has made it clear that the 'in custody' determination is made at the time the habeas petition is filed.").

[8]*Id.* at 434 n.7 (using the term "jurisdiction" "in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction" when determining whether the habeas petitioner had identified the proper respondent and whether the district court had jurisdiction over that respondent); *see also id.* at 452 (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government.").

Finally, Moreland contends that this case is moot since she has been released from prison. As noted above, the Bureau intends to return Moreland to community confinement to serve the remainder of her term if it prevails in this appeal. Therefore, the case is not moot.[9]

## III

Moreland contends and the district court held that a prisoner may earn up to 54 days of credit for each year or partial year of the sentence imposed. As discussed above, the district court multiplied Moreland's 17.5-year sentence by 54 days and ordered that she be given 945 days of credit, directing that each year of her sentence be reduced to 311 days.

The starting point of our analysis is the statute itself:

**(a) Date of release.**–A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). . . .

**(b) Credit toward service of sentence for satisfactory behavior.**–

**(1)** Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of

---

[9]*See Eagles v. United States*, 329 U.S. 304, 307-08 (1946) ("Though the writ has been granted and the prisoner released, the appellate court by what it does is not rendering an opinion and issuing an order which cannot affect the litigants in the case before it . . . . Reversal undoes what the habeas corpus court did and makes lawful a resumption of the custody."); *Campbell v. U. S. Parole Comm'n*, 704 F.2d 106, 109 n.2 (3d Cir. 1983) (holding that compliance with district court order did not render appeal moot "since the effect of our reversal of the district court is to permit the Commission to return [the habeas petitioner] to custody").

the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. . . . Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

**(2)** Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

\* \* \*

**(c) Pre-release custody.**–The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. . . .

**(d) Allotment of clothing, funds, and transportation.**–Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with–
      (1) suitable clothing;
      (2) an amount of money, not more than $500, . . .; and
      (3) transportation . . . .[10]

This court has opined on how good-conduct credit is to be calculated and applied under this statute on at least two prior occasions, concluding that the Bureau's interpretation of the statute is correct and rejecting the same arguments Moreland puts forth.[11] However,

---

[10]18 U.S.C. § 3624(a)-(d).

[11]*See Tatu v. Rasbeary*, 142 Fed. Appx. 215, 215 (5th Cir. 2005); *Sample v. Morrison*, 406 F.3d 310, 312-13 (5th Cir. 2005).

7

neither of those decisions is binding precedent.

In *Sample v. Morrison*,[12] the court concluded that section 3624(b)(1) "plainly states that a prisoner cannot earn any good time credit until he has *served* at least one year of his prison term. At that time, and thereafter 'at the end of each year' of the inmate's prison term, he 'may' be awarded 'up to 54 days' of good time credit."[13] The court explicitly rejected Moreland's method of calculating credit: "The statute, however, contains no language that would permit him to receive *additional* good time credit based on the original prison term 'as imposed' by the court, and it provides no method for computing such credit."[14] But this conclusion was dicta because the petition in *Sample* was dismissed for lack of subject-matter jurisdiction.[15] The court analyzed how credits are calculated only after stating, "[e]ven if we were to assume arguendo that we have subject-matter jurisdiction," the district court did not err in agreeing with the Bureau's calculation.[16] This was not an alternative holding because it could not support the actual judgment in that case, which was dismissal for lack of subject-matter jurisdiction rather than an affirmance of the district court's judgment.

In an unpublished opinion, *Tatu v. Rasbeary*, this court cited with approval *Sample*'s

---

[12]406 F.3d 310 (5th Cir. 2005).

[13]*Id*. at 313.

[14]*Id*.

[15]*Id*. at 312.

[16]*Id*.

discussion of how good-conduct credits are calculated.[17]   *Tatu* squarely held that the

Bureau's construction of section 3624(b)(1) was correct.[18]   Unpublished opinions are not

binding precedent but may be persuasive.[19]

We are persuaded that *Sample* and *Tatu* correctly concluded that section 3624(b)(1)

unambiguously directs how good-conduct credits are to be calculated and applied, which is

up to 54 days "at *the end* of each *year* of the prisoner's term of imprisonment, beginning at

*the end* of the first *year* of the term."[20]   Given its context, this language has a temporal

meaning and can only refer to the end of each year the prisoner serves.  The word "year" has

a commonly understood meaning of 365 (or 366) days, not 311 days.  The statutory language

provides no indication that "year" has an unusual or extraordinary meaning for purposes of

section 3624.  Nor does it indicate that good-conduct credit should be retroactively applied

to reduce each "year" the prisoner serves from 365 to 311 days.

The temporal meaning of "the end of each year of the prisoner's term of

imprisonment" and "beginning at the end of the first year" is brought into even sharper focus

when other parts of section 3624(b)(1) are considered.  Good-conduct credit cannot be

---

[17]142 Fed. Appx. 215, 215 (5th Cir. 2005) ("This court determined [in *Sample*] that the plain language of 18 U.S.C. § 3624(b) supports the [Bureau's] method of calculating good time credit."); *see also Bounds v. Reese*, No. 04-40902, 2005 WL 1870411, at *1 n.1 (5th Cir. Aug. 5, 2005) (holding that the court lacked jurisdiction over the issue of the Bureau's calculation of good-conduct credits, but noting that a similar challenge was rejected in *Sample*).

[18]*Tatu*, 142 Fed. Appx. at 215.

[19]5TH CIR. R. 47.5.4.

[20]18 U.S.C. § 3624(b)(1) (emphasis added).

9

awarded unless the Bureau determines that "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations."[21] Likewise, if the Bureau determines "that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate."[22] The statute contemplates a determination of how much, if any, credit is due will be made after "that year" has expired and the prisoner's conduct during "that year" can be assessed. The statute does not say that conduct will be assessed at the end of 311-day periods, or any other periods less than 365 days.[23] Violent conduct after the 311th day of a given year could mar an otherwise "exemplary" year of compliance and warrant the award of little or no credit.

Moreland's interpretation of section 3642(b)(1) finds no support in the text of the statute. Moreland insists that she is entitled to 54 days for each year of the 17.5-year sentence she received. But all agree that because of her good conduct, Moreland will not serve at least the last two years of her 17.5-year sentence. Section 3642(b)(1) refers to "up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the

---

[21]*Id.*

[22]*Id.*

[23]*See Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 532 (4th Cir. 2005) (noting that section 3624 "assumes that the prisoner has been incarcerated *during the year*, such that" the Bureau can determine whether the prisoner's behavior merits the full amount of good-conduct credit).

end of the first year of the term."[24]  When is the "end" of the last two years of the sentence imposed when those two years will never be served?  How does "during that year" apply to the two years of her sentence that she will not serve for purposes of determining whether Moreland "displayed exemplary compliance with institutional disciplinary regulations," or conversely, "during that year, the prisoner has not satisfactorily complied with such institutional regulations"?[25]  How can the Bureau evaluate Moreland's conduct for two years she did not serve?[26]  Are we to assume that every prisoner automatically gets the maximum 54 days credit for years that he or she will not serve because of prior good-conduct credits?[27]  As this court astutely observed in *Sample*, the statute "provides no method for computing such credit."[28]

---

[24]18 U.S.C. § 3624(b)(1).

[25]*Id.*; *see also Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268-69 (9th Cir. 2001), *cert. denied*, 535 U.S. 1105 (2002) ("Whereas the model prisoner will ordinarily receive his fifty-four-day credit *after* complying with prison disciplinary rules for 365 days, under [the prisoner's] reading, a prisoner who serves 311 days would receive the same number of credits for exhibiting good behavior over only eighty-five percent of the year.").

[26]*See Yi*, 412 F.3d at 532 ("An inmate who is not in prison cannot 'earn' credit for compliance with prison disciplinary regulations."); *White v. Scibana*, 390 F.3d 997, 1001 (7th Cir. 2004), *cert. denied sub nom.*, *White v. Hobart*, 125 S. Ct. 2921 (2005) ("The Bureau cannot evaluate a prisoner's behavior and award credit for good conduct if the prisoner is not still in prison.").

[27]*See Scibana*, 390 F.3d at 1002 ("To interpret 'term of imprisonment' as 'sentence imposed' for purposes of awarding good-time credit would entitle an inmate to receive credit for good conduct in prison for time – perhaps several years of time – that he was not in prison."); *see also O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005) ("To calculate [good-conduct time] based on the sentence imposed would allow an inmate to earn GCT for time he was not actually incarcerated.").

[28]*Sample v. Morrison*, 406 F.3d 310, 313 (5th Cir. 2005); *see also Sash v. Zenk*, __ F.3d __, __ n.3 (2d Cir. 2005) ("In a ten-year sentence, for example, more than one year might be taken off for good behavior, in which case the [Bureau of Prisons] would have to determine the extent of the

11

Similarly, section 3624(b)(1) directs: "Credit that has not been earned may not later be granted."[29] Moreland cannot *earn* credit during the two years of the sentence imposed that she will not serve because of her prior good-conduct credit.[30]

Section 3624(b)(1) also directs how credit is to be calculated "for the last year or portion of a year of the term of imprisonment."[31] It is to be "prorated and credited within the last six weeks of the sentence."[32] In this proration provision, "term of imprisonment" could arguably mean either the time actually served or the sentence imposed upon conviction if it were read in isolation. A prisoner could be sentenced to 17.5 years, like Moreland, and actually serve 15.7 years, and "portion of a year of the term" could mean either the final 0.5 year of the sentence imposed or the final 0.7 year of the time that will actually be served. But in context, the only reasonable construction of the proration provision is to construe "term of imprisonment" as the time the prisoner is actually imprisoned since credit may only be earned and awarded for good conduct during time served.

Moreland and the district court's opinion point out that the phrase "term of

---

prisoner's compliance during a wholly nonexistent year. Perhaps it would be reasonable to assume that a well-behaved prisoner would continue behaving well during this hypothetical time, but nothing in the statute directs the [Bureau] to make such an assumption.").

[29]18 U.S.C. § 3624(b)(1).

[30]*See Sample*, 406 F.3d at 313 ("It is plain from the statute that an inmate must *earn* good time credit."); *see also Yi*, 412 F.3d at 532 ("An inmate who is not in prison cannot 'earn' credit for compliance with prison disciplinary regulations.").

[31]18 U.S.C. § 3624(b)(1).

[32]*Id.*

12

imprisonment" is used many times in section 3624. They recite the familiar canon of construction that a term should be given the same meaning throughout a statute, particularly when a term is repeated within a given sentence.[33] But this canon is merely a sometimes-helpful aid to construction, not an absolute directive to be applied reflexively. The language used in an enactment and its context are paramount. As the United States Supreme Court has held on more than one occasion, the "'presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.'"[34] The Supreme Court has colorfully compared the canon of construction on which Moreland relies to "original sin" with regard to its longevity and the need to guard against it:

> "The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against."[35]

Moreland concedes that the phrase "term of imprisonment" has two distinctly different meanings within section 3624. Section 3624(b)(1) provides that "a prisoner who is serving a term of imprisonment of more than 1 year" may receive good-conduct credit.[36]

---

[33]*See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (noting that this canon of construction is "most vigorous[ly]" applied to terms repeated in the same sentence).

[34]*Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004) (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)).

[35]*Id*. at 596 n.8 (quoting Cook, *"Substance" and "Procedure" in the Conflict of Laws*, 42 YALE L.J. 333, 337 (1933)).

[36]18 U.S.C. § 3624(b)(1).

It is beyond debate that in this context, "term of imprisonment" means the sentence imposed for a conviction. But it is also beyond debate that in section 3624(d) the same phrase means the time the prisoner has actually served, not the sentenced imposed. Section 3624(d) says: "Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with – (1) suitable clothing; (2) an amount of money, not more than $500 . . . ; and (3) transportation . . . ."[37] As these provisions demonstrate, the same phrase may be used to refer to different things, even in the same statute, and each time the phrase's meaning must be derived from its context.

Other federal appellate courts have similarly concluded that in section 3624, the phrase "term of imprisonment" unambiguously means the time served in one usage and the sentence imposed upon conviction in another.[38] These courts, however, have concluded that the phrase "up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term" is ambiguous.[39] Few have explained in any

---

[37]*Id.* § 3624(d).

[38]*O'Donald v. Johns*, 402 F.3d 172, 173-74 (3d Cir. 2005); *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 532-33 (4th Cir. 2005); *Perez-Olivo v. Chavez*, 394 F.3d 45, 49 (1st Cir. 2005); *White v. Scibana*, 390 F.3d 997, 1002-03 (7th Cir. 2004), *cert. denied sub nom., White v. Hobart*, 125 S. Ct. 2921 (U.S. 2005).

[39]*See supra* n.40; *see also Brown v. McFadden*, 416 F.3d 1271, 1272-73 (11th Cir. 2005) (observing that district court's determination that section 3624 was unambiguous was "arguably correct," but deciding to follow other circuit court opinions that have concluded the statute is ambiguous); *Sash v. Zenk*, __ F.3d __ , __ (2d Cir. 2005) (finding section 3624 ambiguous); *Mujahid v. Daniels*, 413 F.3d 991, 999 (9th Cir. 2005) (same); *James v. Outlaw*, 126 Fed. Appx. 758, 759 (8th Cir. 2005) (same)*; Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1271 (9th Cir. 2001) (same). *But see Williams v. Lamanna*, 20 Fed. Appx. 360, 361 (6th Cir. 2001) (concluding "[t]he statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that

detail how they reached that conclusion given the context within which this phrase is used.[40]

Some recognize that the construction proffered by prisoners is not supported by section 3624's text, observing that the Bureau cannot evaluate a prisoner's conduct during a time that is not served[41] or similarly cannot award credit based on good conduct for a part of a sentence that was not served.[42] They nevertheless conclude that the phrase is ambiguous based on the fact that "term of imprisonment" is used differently in different places within section 3624. Using a phrase unambiguously in one part of a statute, then using it differently, but unambiguously in another part, does not dictate that its use in yet another part of the statute is ambiguous. Given its context,[43] we fail to see any ambiguity in the phrase "up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term."[44]

We hold that the district court erred in granting Moreland's petition for habeas corpus. Accordingly, the district court's judgment is REVERSED, and judgment is RENDERED DENYING the petition for writ of habeas corpus.

---

might potentially be served by the inmate").

[40]*But see Perez-Olivo*, 394 F.3d at 49 (concluding that "term of imprisonment" could mean either time served or the sentence imposed as used in the phrase "credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence" and, therefore, how to calculate the 54-day credit was ambiguous).

[41]*See, e.g., Sash*, ___ F.3d at ___; *Yi*, 412 F.3d at 532.

[42]*See, e.g., Sash*, ___ F.3d at ___; *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005).

[43]18 U.S.C. § 3624(a), (b), (d).

[44]*Id.* § 3624(b)(1).

ENDRECORD

CARL E. STEWART, Circuit Judge, specially concurring:

I concur in the panel majority judgment which reverses the district court's grant of Moreland's petition for habeas corpus. I disagree, however, with that part of the panel majority's analysis that relates to its conclusion that 18 U.S.C. § 3624(b) is unambiguous. I would reverse the district court's grant of habeas relief for the following reasons.

First, the decisions of the district court and magistrate judge are carefully reasoned. Even though I concur in reversing the judgment granting habeas relief to Moreland, I find that the district court's reading of § 3624(b) is both principled and reasonable. Secondly, even though not binding precedent, at least two panels within this circuit have noted that the language of § 3624(b) supports the BOP's method of calculating good time credit or, "[a]lternatively, . . . is ambiguous and that the BOP's interpretation is entitled to deference pursuant to *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)." *Bounds v. Reese*, 2005 WL 1870411 n.1 (5th Cir. 8/5/2005) (citing *Sample v. Morrison*, 406 F.3d 310, 312-13 (5th Cir. 2005)). Thus, there are at least two reasonable interpretations of this statutory language. I join a number of judges from our sister circuit courts of appeals, and the district judge and magistrate judge below, in concluding that the pertinent statutory language is ambiguous.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its

17

own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-843 (footnotes omitted). Congress has not addressed the precise question at issue, namely which of these two plausible calculations is intended by this language that attributes to the phrase "term of imprisonment" more than one definition within a single sentence and within a single subsection of § 3624. *Cf. Perez-Olivo v. Chavez*, 394 F.3d 45, 50-51 (1st Cir. 2005) (concluding that neither the statute's language nor its legislative history indicates whether Congress intended to calculate good time credit based on "time served" or "sentence imposed"). Therefore, under *Chevron*, the only question presented herein is whether the BOP's calculation is based on a permissible construction of § 3624(b).[45]

Rather than hinge reversal of the district court's judgment upon whether this ambiguity is dissolved by the context of the words, I would uphold the BOP interpretation of the statute because it is one of at least two reasonable interpretations of § 3624(b). *See Sample v. Morrison*, 406 F.3d 310, 313 (5th Cir.2005) (finding in dicta that "the plain effect" of the annual, discretionary, award of good time credit contemplated by § 3624(b) is consistent with the BOP's interpretation of the statute). *See also Perez-Olivo*, 394 F.3d at 52-53; *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005); *Yi*, 412 F.3d at 534; *White*, 390

---

[45] The rule of lenity is not applicable to this question. *See Sash v. Zenk*, --- F.3d ----, 2005 WL 2766782, *2-*3 (2nd Cir. 10/26/2005) (finding that the purposes of the rule of lenity are not implicated by this question because § 3624(b) is administrative and not criminal in nature).

18

F.3d at 1003; *Pacheco-Camacho*, 272 F.3d at 1272; *Brown*, 416 F.3d at 1273 (each finding reasonable the BOP's interpretation of § 3624(b)). *Perez-Olivo* discusses in some detail the different meanings that the phrase "term of imprisonment" has within § 3624 and examines whether the statute's legislative history casts light upon Congress' intent about the calculation at bar. As noted in *Perez-Olivo*, 394 F.3d at 51-52, regarding the calculation urged by Moreland, virtually every other court of appeals that has visited this issue "has found that 'term of imprisonment' is ambiguous as used in § 3624(b)(1) and has upheld the BOP's interpretation of that term as meaning 'time served.'"

I agree with our sister circuits that found ambiguous the § 3624(b) language and that found applicable *Chevron*'s deference. *See Perez-Olivo v. Chavez*, 394 F.3d 45, 51 (1st Cir. 2005); *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir. 2005); *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005); *White v. Scibana*, 390 F.3d 997, 1002-03 (7th Cir. 2004); *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1270-71 (9th Cir. 2001); *Brown v. MacFadden*, 416 F.3d 1271, 1273 (11th Cir. 2005) (each finding § 3624(b) ambiguous under step one of *Chevron*). *See also Chevron*, 467 U.S. at 842-43 (stating rule of deference to agency's administrative interpretation of ambiguous statutory language, in the absence of clear congressional intent regarding the precise issue at bar). Unlike the other courts that have addressed this issue, the courts below violated *Chevron* when they chose Moreland's interpretation of this ambiguous statute over the reasonable interpretation of the BOP. For this reason, I specially concur in the judgment which reverses the grant of habeas corpus relief to Moreland.