O’BRIEN, Circuit Judge,
concurring.
I concur in the result reached by the majority. If the statutory language were ambiguous, I would join in the majority’s reasoning and discussion affording Chevron deference to the agency’s interpretation of the statute. But, like the Fifth Circuit, I think the statute unambiguously specifies the method by which good time is to be calculated. Moreland v. Federal Bureau of Prisons, 431 F.3d 180, 186 (5th Cir.2005). The Bureau of Prisons has been faithful to that method.
Wright’s term of imprisonment is 168 months; that is also 14 years or 5112 days. It commenced May 24, 1996. Wright may legitimately ask, ‘When do I get out?” Absent good time credits the answer is quite simple. Each day Wright serves reduces the remaining days by one. It is (or can be) calculated and credited daily. Provisions for good time credit add a wrinkle and prompt other questions.
With respect to good time credit Wright may ask, “How much good time credit do I get, when is it to be credited and how is it to be credited?” The statute answers each question with straight-forward language.[1]
First, the amount is unambiguous, because it is easy to calculate. It depends upon the prisoner’s conduct but “cannot exceed 54 days per year.”
Second, when it is to be credited is also unambiguous and the calculations are, again, simple. It is to be credited “at the end of each year of the prisoner’s term of imprisonment, beginning at the end of the first year of the term,” the sentence anniversary date. A term of imprisonment expressed in months must be converted into years in order to determine anniversary dates; for a fourteen year sentence with no good time credits, there are 13.[2] The credit is to be applied annually on the anniversary date.
Finally, how the credit is to be applied seems to be equally clear and the calculations equally simple. Good time credit is to applied “toward the service of the prisoner’s sentence.” A prisoner serves his sentence day by day. He expects to, and does, receive credit against the “term of imprisonment” for each day he has served. Thus, to calculate the time remaining in a “term of imprisonment” the imposed term must be converted to days. A 168 month sentence beginning May 24, 1996, ends May 23, 2010. That is 5112 days, including the extra days in leap years. Each day served is deducted from the total days to be served. At the end of the first year the prisoner has 4747 days remaining (5112-365 = 4747). If the prisoner earned maximum good time during that year it must be credited on the sentence anniversary date. Using the method for crediting time actually served (deducting it from the time *1238 remaining) the prisoner would then have 4693 days remaining in his “term of imprisonment” (4747-54 = 4693). The calculations continue, granting daily credit for time actually served and annual credit for good time earned, until the days remaining equal zero. Following is a spread sheet example (faithful to statutory language) of a 14 year sentence with maximum good time credits. It is intended for illustrative purposes only and does not purport to be the Bureau of Prisons’ actual calculation here.
Good Time Computation — 14 year sentence
Begin Date End Date Years Months Days
5/24/1996 5/23/2010 14 . 168 5112
Anniversary Year Served Time Good Time Total Credit Days left after credit Release Date
5/24/1996 0 5112 5/23/2010
5/24/1997 1 365 54 419 4693 3/30/2010
5/24/1998 2 365 54 419 4274 2/4/2010
5/24/1999 3 365 54 419 3855 . 12/12/2009
5/24/2000 4 366 54 420 3435 ' 10/19/2009
5/24/2001 5 365' 54 419 3016 8/26/2009
5/24/2002 6 365 54 419 2597 7/3/2009
5/24/2003 7 365 54 419 2178 5/10/2009
5/24/2004 8 366 54 420 1758 3/17/2009
5/24/2005 9 365 54 419 1339 1/22/2009
5/24/2006 10 365 54 419 920 11/29/2008
5/24/2007 11 365 54 419 501 10/6/2008
5/24/2008 12 366 54 420 81 8/13/2008
7/31/2008 12 68 12 80 1 8/1/2008
8/1/2008 Release Date 0
Served as of 7/31/2008 4451
GT Credit (7/31/2008) 660
Total Credit (7/31/2008) 5111
Summary
Imposed Served Good Time Percentage
5112 4452 87.09%
5112 660 12.91%
Wright proposes a method for crediting good time at odds with the practices of the Bureau of Prisons. It is most clearly stated in the Brief of Amicus Curiae, which Wright explicitly adopted at oral argument:
Petitioner and Amicus, ... read the statute literally to grant a “credit,” that is a deduction, at the “end of each year” of the “term of imprisonment” imposed, if “during that year,” the prisoner has been well behaved. 18 U.S.C. § 3624(b). Accordingly, after the prisoner has served a year, the Bureau may apply a “credit,” by definition a “deduction,” of up to 54 days from that year, if, “during that year,” the prisoner was well behaved. This credit, applied to the prior year of the term, establishes the day on which service of that year was fully satisfied. If the prisoner is granted 54 days’ credit, he satisfied service of the first year of the term of imprisonment on the 311th day actually served. The 312th day served thus becomes the first day of the second year of the term. *1239 After another year of the term has passed, the Bureau must again look back and consider the prisoner’s conduct during the preceding year and again make the appropriate deduction, which establishes the date on which service of that year was satisfied and the succeeding year begins, and so on. Honoring the exact wording of the statute, then, a prisoner will be eligible for 54 days for each year of the “term of imprisonment” imposed by the sentencing court. The plain words of the statute are thus effectuated without the need to read the phrase “term of imprisonment” to have two different meanings — the “term imposed” and the “time served” — in the single sentence in which it appears, as the Bureau of Prisons does.
Amicus Br., Families Against Mandatory Mínimums, at 2-3.
A good lawyer can formulate an argument that makes a hash of almost any statutory, regulatory or contractual language.[3] We must look through the argument. Our approach is practical and circumspect. “As in all statutory construction cases, we begin with the language of the statute.” Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). If the statutory language is not ambiguous, and “the statutory scheme is coherent and consistent,” further inquiry is unneeded. Id. (quotation marks omitted). “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); see also U.S. Nat’l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (“Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute’s full text, language as well as punctuation, structure, and subject matter.”) (internal quotation and citation omitted).
Wright’s arguments present a possible, but implausible, gloss on unambiguous statutory language. If we can fairly do so, we should avoid, not beget, a construction of a statute making it ambiguous.

. 18 U.S.C. § 3624(b)(1) provides in relevant part:
[A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner’s life, may receive credit toward the service of the prisoner’s sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner’s term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

. All other things being equal, the 14th anniversary would be the release date.

. Years ago Chief Justice Burger gave a speech lamenting the poor courtroom competence of many lawyers. With tongue firmly in cheek, Art Buchwald penned a retort as only he could, or would. Among other things he said: "A competent, first class lawyer can tie a case up in knots not only for the jury but for the judge as well____ It is the able lawyers [not the incompetent ones] who should not be permitted in the courtroom since they are the ones who are doing all the damage.” See, Art Buchwald, “Bad Lawyers Are Very Good for the U.S. Justice System," 64 A.B.A. J. 328 (1978).
"An incompetent lawyer can delay a trial for months or years. A competent lawyer can delay one even longer.” Evelle Younger.