Eliot S. SASH, Petitioner–Appellant,

v.

Michael ZENK, Federal Bureau of
Prisons, Respondent–Appellee,

No. 04–6206–PR.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 20, 2005.

Decided: Oct. 26, 2005.

David A. Lewis, The Legal Aid Society,
Federal Defender Division, Appeals Bu-

reau, New York, NY, for Petitioner–Appellant.

Emily Berger, Assistant United States Attorney, Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, on the brief; Susan Corkery, Assistant United States Attorney, of counsel), Brooklyn, NY, for Defendant–Appellee.

Before: SOTOMAYOR and WESLEY, Circuit Judges, and BRIEANT, District Judge.*

SOTOMAYOR, Circuit Judge.

This case deals with the interpretation of 18 U.S.C. § 3624(b), which governs the calculation of credits awarded to federal prisoners for good behavior. The petitioner argues that the interpretation of this provision by the Bureau of Prisons (BOP), set forth in 28 C.F.R. § 523.20, contravenes the clear language of the statute. He further argues that the rule of lenity requires that credits be awarded on the basis of the sentence originally imposed rather than on the amount of time actually served and that, even if *Chevron* deference applies here, the BOP's interpretation of the statute is not reasonable. We apply *Chevron* deference to the BOP's interpretation of § 3624(b) and hold that it is reasonable.

## BACKGROUND

Eliot Sash received a twenty-seven month sentence after pleading guilty to one count of identification document fraud and one count of possessing fifteen or more counterfeit or unauthorized access devices. He filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he should have received 121 days of credit toward the completion of his sentence for good behavior. The BOP, applying a construction of 18 U.S.C. § 3624(b) set forth in 28 C.F.R. § 523.20, awarded Sash only 105 days of credit.

Sash was released on November 22, 2004, having served 17 days more than he contends the law allows. He must still complete an eight-year term of supervised release, which he argues should be reduced because of the excess imprisonment he has suffered. *See* 28 U.S.C. § 2243 (district court shall dispose of habeas applications "as law and justice require"). The United States District Court for the Eastern District of New York (Garaufis, J.) denied Sash's petition in a thoughtful and thorough opinion. *See Sash v. Zenk,* 344 F.Supp.2d 376 (E.D.N.Y.2004).

Section 3624(b) of Title 18 of the United States Code governs credit toward service of sentence for prisoners who behave well, commonly referred to as "good time credit":

[A] prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.... [I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be

---

* The Honorable Charles L. Brieant, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

appropriate.... Credit that has not been earned may not later be granted.... [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence. The BOP interprets this statute to mean that an inmate in Sash's position receives "54 days credit ... for *each year served.*" 28 C.F.R. § 523.20 (emphasis added). Sash interprets it to mean that the inmate receives 54 days of credit for *each year of the sentence as imposed.* Because every well-behaved inmate serves less time than called for by the original sentence, Sash's interpretation would result in more credit for well-behaved prisoners.

## DISCUSSION

■ We review the district court's denial of Sash's petition for habeas corpus *de novo. See Richards v. Ashcroft,* 400 F.3d 125, 127 (2d Cir.2005).

### I. Chevron Deference, Not the Rule of Lenity, Governs Our Review of This Case

■ Sash argues that *Chevron* deference should apply only after we have employed the rule of lenity to resolve statutory ambiguities in favor of the prisoner. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (discussing circumstances under which courts defer to administrative agencies), *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,* 515 U.S. 687, 704 n. 18, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (discussing the rule of lenity).

■ It is true that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980).

But the regulation at issue here interprets neither the substantive ambit of a criminal prohibition nor the penalty it imposed. The fact that the BOP's administrative reward for compliance with prison regulations is a sentence reduction does not make that administrative reward part of the process of criminal sentencing. Because § 3624(b) is not a criminal statute, the rule of lenity is not relevant to this case. *Cf. Perez–Olivo v. Chavez,* 394 F.3d 45, 53 (1st Cir.2005) (stating that "we are evaluating the reasonableness of the BOP's calculation of reductions in a sentence for [good time credit], which is not, strictly speaking, a 'criminal' statute, and thus we do not believe the rule of lenity would apply"); *Sash,* 344 F.Supp.2d at 381 ("[I]t is clear that the rule of lenity should come into play whenever statutory ambiguity leaves in doubt whether particular conduct is subject to criminal penalty and the extent of the punishment that may be imposed by a judge" but not where the prisoner "has already broken the law and been sentenced accordingly").

■ The rule of lenity has two purposes: first, to ensure that the public receives fair notice of what behavior is criminal and what punishment applies to it, *see Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Babbitt,* 515 U.S. at 704 n. 18, 115 S.Ct. 2407; and, second, to ensure that legislatures and not courts define criminal activity. *See id.*

The statutory ambiguity of § 3624(b) does not result in any lack of notice to potential violators of the law of the scope of the punishment that awaits them, because the award or withholding of credit under § 3624(b) is not part of that punishment. Sentencing credits are awarded to ensure administrative order in prison, not to further the punitive goals of the crimi-

nal law. *Cf. Porter v. Coughlin,* 421 F.3d 141, 148 (2d Cir.2005) (holding that prison disciplinary sanctions are not to be considered criminal for purposes of the Double Jeopardy Clause because their purpose is administrative rather than punitive). Any violation of prison regulations resulting in the withholding of credit would be an administrative violation entirely separate from the underlying criminal offense. Thus, potential offenders have no reason to complain that the ambiguity of § 3624(b) leaves them uncertain as to the scope of the criminal punishment that will be triggered by their unlawful acts.

The second concern underlying the rule of lenity is also not relevant here because the regulation is not criminal in nature. No court has infringed upon the role of the legislature by creating a criminal sanction where none existed before. Nor has the BOP infringed upon the courts' role in determining the appropriate sentence to be imposed on an offender within the parameters of the statute. The award of credit for good behavior under § 3624(b) is certainly not intended to diminish the strength of the community's condemnation of the underlying act, as expressed in the statute, nor the individual determination of culpability reflected in the sentence imposed by the court.

Because the purposes of the rule of lenity are not implicated here, we hold that it does not apply to the BOP's construction of § 3624(b). *Cf. Yi v. Fed. Bureau of Prisons,* 412 F.3d 526, 535 (4th Cir.2005) (finding the rule of lenity inapplicable to the interpretation of § 3624(b) because of the notice provided by the BOP's reason-

able interpretation); *Brown v. McFadden,* 416 F.3d 1271, 1273 (11th Cir.2005) (same).

For the same reason, we reject Sash's argument that *Chevron* deference is inappropriate here. The BOP is the agency charged with implementing the statutory provision at issue in this case. *See* 18 U.S.C. § 3624. *Chevron* therefore instructs us to defer to the BOP's interpretation if the statute is ambiguous. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. If the statute is unambiguous, of course, our inquiry ends with the statute's plain meaning. *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993).

■ Sash argues that *Chevron* deference is inappropriate because the statute at issue is criminal in nature. As we noted in *Michel v. INS,* 206 F.3d 253 (2d Cir. 2000), "courts owe no deference to an agency's interpretations of state or federal criminal laws because the agency is not charged with the administration of such laws." *Id.* at 262. By applying *Chevron* in this case, however, we do not suggest that we owe deference to the BOP's interpretation of any underlying substantive criminal law. As discussed above, the provision interpreted here defines neither the scope of criminal liability nor the penalty applicable to criminal punishment. It is not criminal in nature.

We note that the Supreme Court has on at least two occasions given deference to BOP interpretations of sentence-administration statutes. *See Lopez v. Davis,* 531 U.S. 230, 240, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) (applying *Chevron* deference to BOP interpretation of early release statute);[1] *Reno v. Koray,* 515 U.S. 50, 60–61,

1. Sash argues that the deference afforded the BOP in *Lopez* is inappropriate here because that case involved an "actual delegation of discretion," as opposed to an implied delegation like the one here. Even if this distinction were apt, *see Lopez,* 531 U.S. at 240, 121 S.Ct.

714 (agreeing with the BOP's position that "Congress left the question unaddressed"), Sash's argument runs afoul of *Chevron:* "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court

115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (noting that the BOP is the agency charged with administering 18 U.S.C. § 3585(b), which governs credit for prior custody, and that its interpretation is therefore entitled to deference).[2] Because the BOP has "the sort of specific responsibility for administering the law that triggers *Chevron*," *Crandon v. United States*, 494 U.S. 152, 177, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring), and because the law interpreted in this case was not criminal in nature, *Chevron* deference is appropriate if the statute is ambiguous.

## II. § 3624(b) Is Ambiguous, and the BOP's Interpretation Is Reasonable

■ We join our sister circuits in holding that § 3624(b) is ambiguous and that *Chevron* deference therefore applies. *See Perez–Olivo*, 394 F.3d at 51 (holding that § 3624(b) is ambiguous under *Chevron* step one); *O'Donald v. Johns*, 402 F.3d 172, 174 (3d Cir.2005) (same); *Yi*, 412 F.3d at 533 (same); *White v. Scibana*, 390 F.3d 997, 1002 (7th Cir.2004) (same); *Pacheco–Camacho v. Hood*, 272 F.3d 1266, 1271 (9th Cir.2001) (same); *Brown*, 416 F.3d at 1273 (same); *see also Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778 (holding that if Con-

gress has spoken to the precise question at issue, the agency's interpretation will receive no deference; if Congress has delegated interpretation to the agency via ambiguity, courts must defer to the agency's reasonable interpretation). The BOP's interpretation of the statute is one of at least two reasonable interpretations of § 3624(b) and must therefore be upheld. *See Perez–Olivo*, 394 F.3d at 52–53 (holding that the BOP's interpretation of § 3624(b) is reasonable); *O'Donald*, 402 F.3d at 174 (same); *Yi*, 412 F.3d at 534 (same); *White*, 390 F.3d at 1003 (same); *Pacheco–Camacho*, 272 F.3d at 1272 (same); *Brown*, 416 F.3d at 1273 (same); *Sample v. Morrison*, 406 F.3d 310, 313 (5th Cir.2005) (suggesting that the Fifth Circuit would have held the BOP's interpretation of § 3624(b) reasonable if it had reached the question).

Sash argues that the BOP's interpretation is unreasonable because § 3624(b) unambiguously requires that good time be calculated on the basis of the sentence imposed. He points out that the phrase "term of imprisonment" appears several times in § 3624 and in most instances refers to the sentence, not the amount of

---

may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778.

**2.** Sash argues that *Koray* is inapplicable because in that case the Supreme Court found no ambiguity in the language of the statute governing credit for prior custody. In *Koray*, the Supreme Court first interpreted the statute without reference to the agency interpretation, then noted that the BOP had reached the same interpretation in an internal agency guideline, which was entitled to deference because it adopted a " 'permissible construction of the statute.' " *Koray*, 515 U.S. at 61, 115 S.Ct. 2021 (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). The Court seemed to hold that the statute was clear in light of

context and history, but that, in the alternative, the BOP's interpretation was permissible:

> [R]espondent's is not the only plausible interpretation of the language; it would be too much to say that the statute cannot bear the interpretation adopted by the Bureau. And in light of the foregoing textual and historical analysis, the initial plausibility of respondent's reading simply does not carry the day.

*Id.* at 62 (internal citations and quotation marks omitted). Even if Sash is correct that the Court's statements on deference to the BOP in *Koray* were dicta, the Court's explanation is persuasive and supports the conclusion we independently reach: the BOP is the agency charged with administering criminal sentences and deserves deference here.

time served. But there is other language in this statute referring back to the phrase "term of imprisonment" which seems to contradict Sash's reading. A clause in the first sentence of § 3624(b) suggests that the phrase "each year of the term of imprisonment" refers to actual years: "[A] prisoner ... may receive credit ... of up to 54 days at the end of each year of the prisoner's term of imprisonment ... subject to determination by the [BOP] that, *during that year,* the prisoner has displayed exemplary compliance" (emphasis added).

Sash's interpretation would require us to read "during that year" to mean "during a hypothetical year of his sentence." In other words, the BOP would be required to determine whether a prisoner had behaved well during a year which was partly, if not wholly, hypothetical.[3] This appears to conflict with § 3624's directive that good time be calculated at the end of each year on the basis of behavior "during that year"—in other words, on the basis of a prisoner's actual behavior. *See Sash,* 344 F.Supp.2d at 379–80.

Sash relies on language in § 3624 providing for "credit toward the service of the prisoner's *sentence, beyond the time served.*" § 3624(b) (emphasis added). He reads this language to mean "credit based on the total sentence, irrespective of time actually served." The BOP's interpretation, Sash suggests, renders the phrase "sentence, beyond the time served" meaningless. As the district court noted, none of the courts that have decided this issue have been able to explain what "beyond the time served" means. *See Sash,* 344 F.Supp.2d at 380. We agree with the district court, however, that the phrase "beyond the time served" might be intended merely to explain that time credited need not be served. *Id.* at 380 n. 2. As the district court acknowledged, "employing the clause 'beyond the time served' at that point in the sentence is an exceptionally inelegant way to express that intent. On the other hand, it seems no less inelegant than using the same phrase to say 'irrespective of the time served,' as Sash would have it." *Id.*

Sash further points out that the BOP's interpretation leads to a more complicated calculation than his interpretation would.[4] Admittedly, one purpose of the new statute was to make the "computation of credit toward early release pursuant to section 3624(b) ... considerably less complicated than under current law." S. Rep. 98–225, at 146 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3329. But § 3624 simplified the calculation in other ways, *see Pacheco–Camacho,* 272 F.3d at 1269–70 (noting that the earlier statute required calculation of good time credit at different monthly rates depending on the length of the prison term), and Congress is certainly capable of requiring agencies to conduct complex calculations.

Whether or not legislative history may be appropriately used in the first step of a *Chevron* analysis,[5] the legislative history of

---

3. In a ten-year sentence, for example, more than one year might be taken off for good behavior, in which case the BOP would have to determine the extent of the prisoner's compliance during a wholly nonexistent year. Perhaps it would be reasonable to assume that a well-behaved prisoner would continue behaving well during this hypothetical time, but nothing in the statute directs the BOP to make such an assumption.

4. Sash's interpretation is indeed simpler. For a ten-year sentence, for example, "what could be easier than multiplying fifty-four by ten?" *Perez–Olivo,* 394 F.3d at 50.

5. *See Coke v. Long Island Care At Home, Ltd.,* 376 F.3d 118, 127 & n. 3 (2d Cir.2004) (noting that the Supreme Court has sent "mixed messages" as to whether a court may consider legislative history in the first step of a

§ 3624(b) offers nothing that could usefully guide us here. *Cf. Perez–Olivo,* 394 F.3d at 51 (legislative history of § 3624(b) "does not help resolve the ambiguity."). Both parties point to a former version of the statute, since repealed, which made clear that good time was to be computed on the basis of the sentence imposed, rather than time served. *See* 18 U.S.C. § 4161, *repealed by* Pub.L. No. 98–473, § 218(a)(4), 98 Stat. 1837, 2027 (1984). But Congress may omit or repeal a provision either because it wishes to change the provision or because it finds the provision unnecessary. The appearance of a provision in an earlier version of a law is not itself evidence for or against any particular reading unless we know *why* Congress omitted it in subsequent versions. Congress did not make its intent clear in this case.

Finally, we reject Sash's argument that this Circuit adopted his reading of § 3624(b) in *United States v. Tocco,* 135 F.3d 116, 131–32 (2d Cir.1998), *aff'g United States v. Ferranti,* 928 F.Supp. 206, 215–16 (E.D.N.Y.1996) (holding that possible good time credit may legitimately be considered by a district court judge when calculating a sentence) and *United States v. Rodriguez,* 892 F.2d 233, 234, 236 (2d Cir.1989) (rejecting a double jeopardy challenge and holding that § 3624(b), rather than its predecessor, could constitutionally be applied to the defendant; noting that under the new law, a prisoner "could earn no more than 54 days of good time a year, for a total of 486 days over 10 years"). The proper interpretation of § 3624(b) was not before us in either case. It is important to understand, moreover, that whatever interpretation of § 3624(b)

we might reach on our own, we must accept the BOP's interpretation if it is reasonable. *Chevron,* 467 U.S. at 843 n. 11 & 845, 104 S.Ct. 2778. Thus, even if we had implied in *Tocco* or *Rodriguez* that a certain interpretation would be permissible, this would not have foreclosed the BOP from adopting an alternate reasonable interpretation at a later point. Because the BOP's interpretation of § 3624(b) is reasonable, we apply *Chevron* deference and find it permissible.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

*Chevron* analysis); *see also Gen. Dynamics Land Sys. v. Cline,* 540 U.S. 581, 587–90, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (using legislative history to find a statute unambiguous, and *Chevron* deference therefore inappropriate).

